UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| James J. Connelly, | ) | CASE NO: 5:14CV1635 |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER AND DECISION** |
| | ) | |
| Standard Ins. Co. of America, | ) | (Resolving Docs.25, 26) |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court are the parties' cross motions for judgment on the administrative record. Docs. 25, 26. Defendant Standard Insurance's motion is GRANTED (Doc. 25). Plaintiff James J. Connelly's motion is DENIED (Doc. 26).

I. **Legal Standard**

The Sixth Circuit, in *Frazier v. Life Ins. Co. of North America*, recently articulated the standard of review that a district court applies after the administrator of a benefit plan denies benefits:

> Under ERISA, a denial of benefits "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Majestic Star Casino*, 581 F.3d at 364–65. If the administrator or fiduciary can show it has such discretionary authority, a benefits denial is reviewed under the arbitrary and capricious standard. *Haus [v. Bechtel Jacobs Co.*, 491 F.3d 557, 561–62 (6th Cir.2007)] (internal quotation marks omitted). Although "magic words" are not required, this Court "has consistently required that a plan contain a clear grant of discretion" to the administrator or fiduciary before applying the deferential arbitrary and capricious standard. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (internal quotation marks omitted,

emphasis in original). A plan is not required to, but "may expressly provide for procedures for allocating fiduciary responsibilities." 29 U.S.C. § 1105(c)(1).

725 F.3d 560, 566 (6th Cir.2013).   Herein, the parties agree that the arbitrary and

capricious standard applies.

The undersigned has previously explained the arbitrary and capricious standard as

follows:

> "[T]he arbitrary or capricious standard is the least demanding form of judicial review of administrative action and when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989). A decision to terminate benefits is not arbitrary and capricious if it was the product of deliberate principled decision making and based on substantial evidence. *Killian v. Healthsource Provident Administrators, Inc*., 152 F.3d 514, 520 (6th Cir. 1998). A plan administrator's inherent conflict of interest by virtue of being both sole decision maker and sole payor should also be taken into account. *Schwalm v. Guardian Life Ins. Co. of Am*., 626 F.3d 299, 311 (6th Cir. 2010); *Calvert v. Firstar Finance, Inc*., 409 F.3d 286, 292 (6th Cir.2005) (citations omitted).

> In determining whether a plan administrator's decision to deny LTD benefits was arbitrary and capricious, a court may not substitute its own judgment for that of the administrator. *Brown v. National City Corp*., 974 F.Supp. 1037, 1041 (W.D.Ky.1997), *aff'd*, 166 F.3d 1213 (6th Cir. 1998). Even if there is sufficient evidence to support a finding of disability, "[i]f there is a reasonable explanation for the administrator's decision denying benefits ..., then the decision is neither arbitrary nor capricious." *Schwalm*, 626 F.3d at 308.

> The plan administrator breaches its discretion when the decision is made in bad faith or otherwise contrary to law. *See  Daniel v. Eaton Corp*., 839 F.2d 263, 267 (6th Cir.1988) ("A plan administrator has broad discretion in deciding questions of coverage and eligibility for benefits. This court has held repeatedly that the appropriate determination in reviewing the decision of a plan administrator with respect to a claim for benefits is whether the decision was arbitrary, capricious, made in bad faith or otherwise contrary to law.") (citing *Adcock v. Firestone Tire and Rubber* Co., 822 F.2d 623, 626 (6th Cir.1987) ("In reviewing the decisions of plan administrators under ERISA, the appropriate standard of review is whether the decision was arbitrary, capricious, or in bad faith.")).

*Arquilla-Romeo v. Metro. Life Ins. Co*., 980 F. Supp. 2d 847, 850-51 (N.D. Ohio 2013).

**II. Facts**

The parties agree on the underlying operable facts in this matter.  Connelly worked as a staff attorney for Community Legal Aid Services, Inc. from May 26, 1998 through July 26, 2011, the date he was terminated.  As an employee, Connelly participated in an employee benefit welfare plan insured by Defendant Standard Insurance.  Standard Insurance is both the Plan's insurer and claims administrator.  In September of 2012, Connelly submitted to Standard a claim for disability benefits.  In his claim, Connelly claims he became disabled on July 25, 2011, the day before his termination.  Connelly asserted that depression and anxiety, coupled with a flare up of his Crohn's disease led to his disability.

During the pendency of his claim, Connelly sought and received Social Security Disability benefits.  However, the Social Security Administration declined to find a 2011 onset date, instead concluding that Connelly did not become disabled until February 17, 2012.

The parties agree that in order for Connelly to succeed, he must demonstrate that as of July 25, 2011 he was "unable to perform with reasonable continuity the Material Duties of [his] Own Occupation."  In support of meeting this burden, Connelly submitted Attending Physician's Statements from Dr. Zulfikar Mangalji and Dr. Carlos Ricotti.  Dr. Mangalji indicated that he recommended that Connelly cease working in July of 2011 due to a flare up of Connelly's Crohn's disease.  Dr. Ricotti claims that he made the same

recommendation – that Connelly stop work in July of 2011 – due to "onset of full blown flare up of Crohns, causing anemia, pain nausea."

On January 15, 2013, Standard denied Connelly's claim.  Standard claimed that the medical record supported a finding that Connelly became disabled in February of 2012, *after* his employment ended.  On July 13, 2013, Connelly administratively appealed the denial of his claim. On October 23, 2013, Standard upheld the denial of the claim.  At the same time, Standard offered Connelly the ability to submit additional medical documentation.  Connelly did so, providing office notes from Dr. Ricotti. Standard reviewed these additional materials and upheld its decision again on February 6, 2014.

### III. Analysis

In the instant matter, Connelly argues at length that Standard erred when it relied upon the findings of the Social Security Administration.  Connelly asserts that the findings of the Administration should have been relied upon to demonstrate a pre-existing condition, but not relied upon to deny benefits.  However, there is nothing to suggest that Standard treated the Administration decision as binding or definitive.  Moreover, there is no dispute that Connelly spent his entire career at Legal Aid with Crohn's disease.  As such, there is no dispute that Standard acknowledged Connelly's pre-existing condition.

A full review of the record does not reveal any arbitrary or capricious decision making from Standard.  Connelly is correct that he submitted to statements from his physicians indicating that they had recommended he end his employment in July of 2011. However, these statements are wholly unsupported by the objective medical evidence. For example, Connelly saw Dr. Ricotti twice in March of 2011.  As a result of a CT scan,

4

Connelly was treated with Entocort and scheduled for a colonoscopy in early April of 2011.  The colonoscopy revealed nothing abnormal.  Connelly did not visit Dr. Ricotti again until August 12, 2011.  As a result, there are no records from Dr. Ricotti that support his statement that he recommended Connelly cease working in July of 2011.  Moreover, there is no objective medical evidence in Dr. Ricotti's file that would support such a recommendation within that time frame.

Similarly, Connelly first visited Dr. Mangalji in 2011 on July 12.  Connelly scheduled this visit for treatment of diabetes and hypertension.  Nothing in the record indicates that Connelly and Dr. Mangalji spoke of his Crohn's disease.  Connelly then visited Dr. Mangalji again on August 16, 2011.  Records from that visit indicate that Connelly has Crohn's disease, but nothing suggests any increase in problems or symptoms from his Crohn's disease.  Moreover, the sole mention of Connelly's occupation indicates that he was "fired" from his job.

Accordingly, neither contemporaneous office notes nor treatment records support either doctor's statement that he recommended that Connelly cease his employment in July of 2011.  Standard, however, did not rely solely on the fault in Connelly's evidence.  Standard also utilized to doctors to perform a records review, Dr. Oded Shulsinger and Dr. Steven Beeson.  Dr. Shulsinger noted that none of Dr. Mangalji's notes mention problems with Crohn's disease.  Dr. Shulsinger concluded that there was no evidence that Connelly was disabled on July 25, 2011.  Dr. Shulsinger went on to note that Connelly's records reflect an exacerbation of his Crohn's disease in March of 2012 and that the exacerbation rendered him disabled as of that time frame.  Dr. Beeson opined that in July of 2011, Connelly's Crohn's disease was "relatively quiescent," noting that the

5

medications Connelly was receiving, Entocort and Pentasa, were not the medications he would expect would be used to treat an aggressive flare up of Crohn's disease.

Accordingly, the record supports that Standard made a reasonable decision following review of the entire administrative record.  Both doctors that performed records reviews concluded that the determination made by the Social Security Administration was wholly supported by the record, while simultaneously concluding that the record was void of any evidence of disability in July of 2011.  In contrast, both attending physicians gave statements regarding recommendations that they purportedly made in July of 2011. These recommendations are not contained in their treatment records and they are not supported by objective medical evidence.  Accordingly, Standard cannot be said to have erred in its denial of long term disability benefits.

The Court would note that it would reach this decision even if it performed a *de novo* review of the record.  As such, the Court need not delve into Connelly's assertion that Standard is laboring under a conflict of interest.

**IV. Conclusion**

Standard's motion for judgment on the administrative record is GRANTED. Connelly's cross-motion for judgment is DENIED.  Judgment is hereby entered in favor of Defendant Standard Insurance.  The complaint is hereby dismissed.


IT IS SO ORDERED.



December 9, 2015             ____/s/ *Judge John R. Adams*_____
Date                                       JUDGE JOHN R. ADAMS
                                              UNITED STATES DISTRICT COURT


6